NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| SALAHUDDIN F. SMART, | : | |
| | : | Civil Action No. 14-3007 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ARAMARK INC., et al., | : | |
| | : | |
| Defendants. | : | |

---

**BUMB, District Judge:**

This matter comes before the Court upon Plaintiff's submission of a § 1983 civil complaint and his application to proceed in forma pauperis.  See Docket Entry No. 1.  Plaintiff "is a recreational litigant,"[1] and the majority of his prior actions have been commenced in forma pauperis.[2]

---

[1] See Tucker v. Ann Klein Forensic Ctr. Hosp., 2014 U.S. Dist. LEXIS 55314, at *1-2 (D.N.J. Apr. 22, 2014) (citing Marrakush Soc. v. New Jersey State Police, 2009 U.S. Dist. LEXIS 68057 (D.N.J. July 30, 2009), for the observation that "a 'recreational litigant' is the one who engages in litigation as sport and files numerous submissions with little regard for substantive law or court rules") (brackets omitted).

[2] In December 2012, addressing one of Plaintiff's actions, Hon. Jerome B. Simandle ("Judge Simandle") stated that "Plaintiff has initiated at least forty-four civil actions in this District over the period of the last ten years and, in at least twenty-one of those actions, Plaintiff had his in forma pauperis status revoked."  Smart v. Twp. of Evesham, Civil Action No. 12-7402 (N.J.D.), Docket Entry No. 2, at 1-2 and n.2.  A year and a half after Judge Simandle's decision, the number of Plaintiff's district-level actions had reached 59, with 58 being filed in this District and one (where he paid the $350 filing fee) in the Southern District of New York.  The Third Circuit was also inundated with Plaintiff's actions commenced in forma pauperis,

Here, Plaintiff submitted a *prisoner's* in forma pauperis application.  See Instant Matter, Docket Entry No. 1-1.  The application, as well as the envelope it was mailed in, show that he commenced the case at bar while in confinement.  See id., see also id. Docket Entry No. 1, at 10 (envelope).  Therefore, this Court will grant him in forma pauperis status for the purposes of this action and will screen his complaint on the merits.[3]  See 28

---

and in forma pauperis status was denied to him in thirty-one such actions.  See Smart v. Gloucester Twp. Mun. Corp., 229 F. App'x 87, 88-89 and nn. 1 and 2 (3d Cir. N.J. 2007), cert. denied, 552 U.S. 1265 (Mar. 17, 2008) (verifying that the Supreme Court also had its share of Plaintiff's filings).  While Plaintiff's complaints invariably challenged the actions of law enforcement or prison officials, he has seemingly escaped the reach of a so-called "three strikes" rule by: (a) commencing his actions in between his numerous prison terms; and (b) abandoning these matters once a qualifying-under-the-rule dismissal was looming.  See, e.g., Smart v. County of Burlington, 2013 U.S. Dist. LEXIS 121435, at *1 (D.N.J. Aug. 26, 2013) (finding that, as recently as in last August, Plaintiff qualified for in forma pauperis status during his incarceration).  In addition, Plaintiff's continuous change-of-address notices (from a prison address to a civilian address, and then to prison address, many times over), and the Clerk's corresponding changes of the dockets, allowed Plaintiff to obtain in forma pauperis status since this District omitted to keep a record of his cases commenced while in confinement and dismissed with a "strike."  See, e.g., Smart v. Borough of Magnolia, Civil Action No. 13-0235, Docket Entry No. 5, at 1 (an October 2013 decision stating that, after commencing that matter under his prison address, "Plaintiff submitted a notice of change of address which indicates that he is no longer in prison.  Therefore, the Clerk [was] ordered to send to Plaintiff an application to proceed in forma pauperis by a non-prisoner").  This Court, therefore, will expressly address the issue of Plaintiff's accruing a "strike" in the instant matter.

   [3]  The Court also takes this opportunity to notify Plaintiff that this Court's conclusive dismissal of the within complaint for failure to state a claim would qualify as a "strike" for the

U.S.C. § 1915A (The court is obligated to screen the complaint and dismiss any claim that is frivolous, malicious or fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).

Plaintiff's complaint named five Defendants: Aramark Inc.,[4] one of Aramark's executives, the Department of Corrections ("DOC"), Camden Board of Freeholders ("Freeholders") and the warden ("Warden") of the Camden County Correctional Facility ("CCCF"). <u>See</u> Docket Entry No. 1, at 1. The complaint asserted that the CCCF did not allow the inmates to work at the CCCF's kitchen if the inmates had facial hair since it required, as a prerequisite to such employ, that the inmates would shave their "beards." <u>See</u> <u>id.</u> at 4-8. From that requirement, Plaintiff deduced that Defendants must have discriminated against Muslim, Jewish and Christian inmates who had facial hair due to their religious beliefs. <u>See</u> <u>id.</u> at 9 (stating that the complaint was filed on behalf of "a class [of] all those who practice Jewish and Muslim religions and Christian[s] who had to cut their beards in order to work in the kitchen"). Stating that he was Muslim,

_____

purposes of the "three-strikes" rule.

    [4]  Aramark is a supplier of food, business facilities and uniforms. <u>See</u> http://www.aramark.com/AboutARAMARK/Business Purpose; <u>see</u> <u>also</u> <u>Rodriquez v. Nichols</u>, 521 F. App'x 47, 48 (3d Cir. 2013) ("Aramark [is] the prison's food supplier"); <u>Adams v. Neubauer</u>, 195 Fed. Appx. 711, 713 (10th Cir. 2006) ("Aramark Correctional Services, Inc., provides food services at the prison under contract with the [local] Department of Corrections").

Plaintiff invoked his First Amendment rights in order to seek $1 million from Aramark, $1 million from the DOC, $1 million from the Freeholders, $1 million from the Warden and $10,000 from the Aramark's executive. See id. at 4-9 (stating that Plaintiff's right to work as kitchen staff was violated by the prohibition on facial hair).

The DOC and Warden, in his official capacity, are not amenable to a § 1983 suit. See Didiano v. Balicki, 488 F. App'x 634, 638 (3d Cir. 2012) (relying on Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989), and Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165 (3d Cir. 1997)). Plaintiff's respondeat superior claims against Aramark, the Aramark executive and Freeholders also fail, as has already been explained to Plaintiff in his prior suits. See, e.g., Smart v. Borough of Bellmawr, 528 F. App'x 163, 165 (3d Cir. 2013) (a claim of "failure to train or supervise . . . requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those [subordinate] employees will come into contact"); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (relying on Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)); accord Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

Moreover, even if the Court were to hypothesize that Plaintiff could cure the shortcomings of his pleading by naming,

4

as defendants, those prison officials who are administering the CCCF's kitchen and, thus, developed and enforce the no-facial-hair policy, the complaint is still without merit.

Plaintiff's reliance on the First Amendment is misplaced.[5] Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.[6]  Even if this Court presumes that: (a) Plaintiff's Muslim beliefs are sincerely held, and (b) he has facial hair because of these beliefs,[7] his ability to practice his religion cannot be affected by his inability to have

---

[5]  The First Amendment is applicable to the states via the Fourteenth Amendment.  See DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000).

[6]  The Supreme Court has held that pre-trial detainees and "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including those protections afforded by the First Amendment, such as its proscription against any law prohibiting the free exercise of religion. See DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000).  However, "a prisoner's right to practice his religion is not absolute," and prison officials may restrict the exercise of an inmate's religious expression "when necessary to facilitate some legitimate goals and policies of penal institutions."  Dreibelbis v. Marks, 675 F.2d 579, 580 (3d Cir. 1982).

[7]  "[A] mere assertion of a religious belief does not automatically trigger First Amendment protections.  To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections."  DeHart, 227 F.3d at 51.

his beard at the CCCF's kitchen.[8]  Correspondingly, if construed
liberally, Plaintiff's allegations may suggest only Fourteenth
Amendment challenges, e.g., due process and equal protection
claims.  However, such claims are also meritless.

"[P]risoners have no protected liberty or property interest
in retaining prison employment and, certainly, in employment [at
a particular position, e.g., as a kitchen staff]." Mimms v.
U.N.I.C.O.R., 2010 U.S. Dist. LEXIS 20389, at *10-11 (D.N.J. Mar.
8, 2010) (citing Bulger v. United States Bureau of Prisons, 65
F.3d 48 (5th Cir. 1995); James v. Quinlan, 866 F.2d 627 (3d Cir.
1989); and Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982));
aff'd, 386 F. App'x 32, 35 (3d Cir. 2010) ("[Since] prisoners do
not have constitutionally protected interests in . . .
employment, [the district court] properly dismissed with
prejudice his claims relating to [employment opportunity]")
(citation omitted).  Therefore, Plaintiff's due process claim
necessarily fails: if he has no constitutional right to work,
moreover to work as a kitchen staff, he a fortiori has no right
to work at the CCCF's kitchen while having a beard.

_____

[8]  See Turner v. Safley, 482 U.S. 78, 89-90 (1987) (setting
forth factors "relevant in determining the reasonableness of the
regulation at issue," and observing that courts should assess,
inter alia, the plaintiff's "alternative means" to exercise his
religious rights).  Here, Plaintiff's "alternative means" to
practice Islam are not at issue, since Islam does not require the
faithful to work as a kitchen staff.

Plaintiff's equal protection claim fares no better.  Here, he admits that *all* inmates wishing to work as CCCF's kitchen staff are obligated to shave their facial hair, regardless of whether they were Muslim, Jewish or Christian.  True, the Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  However, this is not a command that all persons be treated alike, but, rather, a direction that all persons *similarly-situated* be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Vacco v. Quill, 521 U.S. 793, 799 (1997).[9]  Correspondingly, no discrimination could be found in "bona fide . . . and mandatory . . . requirements [that] apply to all [persons] who want to practice [a certain line of employ because such requirements] do not create a suspect classification based on race, religion or

---

[9]  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification.  See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").  Although imprisonment entails the limitation of many rights and privileges, see Pell v. Procunier, 417 U.S. 817, 822 (1974), inmates have a right to be free from discrimination based on race and other "suspect classifications."  See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980).

alienage." <u>Tolchin v. Supreme Court</u>, 111 F.3d 1099, 1114 (3d Cir. 1997) (citing <u>Schumacher v. Nix</u>, 965 F.2d 1262, 1266 (3d Cir. 1992)).  Since the regulation challenged by Plaintiff applies equally to all inmates regardless of their religious beliefs, and is rationally related to the CCCF's legitimate penological goal of minimizing hair contamination of the food served at the CCCF (as is evident from the fact that it is a prerequisite to working in the kitchen), Plaintiff's equal protection claim fails.

Granted that Plaintiff's complaint, being detailed and lengthy, unambiguously shows that his challenges are limited to the CCCF's sanitary regulation allowing the inmates to be employed as kitchen staff only if they shave their facial hair, Plaintiff's complaint will be dismissed with prejudice, and this dismissal will be a "strike" under the "three-strikes" rule.[10]

An appropriate Order follows.


                                   s/Renée Marie Bumb
                                   **RENÉE MARIE BUMB**
                                   **United States District Judge**


Dated: May 29, 2014

---

[10]  No leave to amend is warranted here since Plaintiff's paraphrasing of the same facts would not cure the core deficiencies of his claims.  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 114 (3d Cir. 2002).  Plaintiff's application for class certification will be denied as moot.