NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                              :
SALAHUDDIN F. SMART,          :
                              :  Civil Action No. 14-3007 (RMB)
          Plaintiff,          :
                              :
     v.                       :                **OPINION**
                              :
ARAMARK INC., et al.,         :
                              :
          Defendants.         :
_____:

**BUMB**, District Judge:

   This matter comes before the Court upon Plaintiff's filing of an application titled "Rule 60B(6) Post Judgment Relief Motion."  See Docket Entry No. 5.

   On May 13, 2014, the Clerk docketed Plaintiff's complaint that gave rise to this matter.  See Docket Entry No. 1.  Since he filed his complaint while being a prisoner and submitted a prisoner's in forma pauperis application, this Court, upon granting him in forma pauperis status, screened the complaint for sua sponte dismissal.[1]  See Docket Entries Nos. 2 and 3.

---

[1] While Plaintiff's allegations raised in his numerous prior actions reflect multiple municipal-level penal proceedings, accord https://w3.lexis.com/research2/pubrec/searchpr.do?_m=6d8d c485d16669d60107bcdba22041bd&_src=314664.3004974&csi=314664&wchp= dGLzVzB-zSkAz&_md5=f6d89cf5a719c0217952d00a5d198d8e (Plaintiff's public record reflecting judgments in those actions), his current confinement resulted from a May 13, 2014, conviction based on controlled-substance offenses adjudicated by the Superior Court of New Jersey, Law Division.  See https://www6.state.nj.us/DOC_ Inmate/details?x=1484474&n=0 (indicating that Plaintiff is also

Upon finding that the complaint contained no claim upon which relief could be granted, and the deficiencies were not amenable to cure by repleading, this Court dismissed the complaint with prejudice; that decision was entered on May 29, 2014. See id.; see Smart v. Aramark Inc., 2014 U.S. Dist. LEXIS 73106 (D.N.J. May 29, 2014) (replicating that decision).

Nine weeks passed by.

On July 31, 2014, the Clerk docketed the application at bar, which challenged this Court's dismissal of Plaintiff's complaint with prejudice. See Docket Entry No. 5. While lengthy and hard to follow, the application could be summarized as an expression of Plaintiff's displeasure with: (a) this Court's dismissal of the complaint without leave to amend, which barred him from making further submissions and prevented him from withdrawing his claim prior to final resolution; (b) Plaintiff's accrual of a "strike" for the purposes of the "three strikes" rule; and (c) this Court's notice of Plaintiff's prior actions in this District, the Court of Appeals and the Supreme Court, and of his recreational litigation practices. See Docket Entry No. 5.[2]

---

known as "Dyshon Smart" and "James Johnson"); see also New Jersey Division of Youth and Family Services (DYFS) v. Smart, Civil Action No. 06-0138 (indicating that Plaintiff also refers to himself as "Salahudin Farrah" or as "Prince Salahuddin").

[2] Just within the seven weeks following Plaintiff's commencement of the instant matter, Plaintiff commenced – only in this District – four more civil actions. See Smart v. State of New Jersey, Civil Action No. 14-4302 (FLW) (commenced July 9,

Attempting to eliminate the "strike" accrued in connection with this matter, Plaintiff alleged that: (a) this Court erred in its legal finding that Plaintiff's free exercise rights could not have been implicated by the events alleged in the complaint, see id. at 4-5; (b) this Court screened Plaintiff's complaint applying incorrect legal standards, see id. at 2-3; and (c) this Court erred in reading the complaint as alleging that Plaintiff was a religious Muslim. See id. at 3 (asserting that Plaintiff's faith was Jewish on the day he executed the application at bar).

Plaintiff's application warrants no relief, since it is untimely and a meritless motion for reconsideration that merely bears a Rule 60 designation. Local Civil Rule 7.1(i) governs motions for reconsideration. See Clark v. Prudential Ins. Co. of Am., 940 F. Supp. 2d 186, 189 (D.N.J. 2013); see also L. Civ. R. 7.1(i). The Rule states, in no ambiguous terms, that "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment." L. Civ. R. 7.1(i). Moreover, the Rule sets forth a steep substantive test that the movant may seek reconsideration only if the movant, in good faith, "believes [that] the Judge . . . has overlooked [a

---

2014); Smart v. Admin. Office of the Cts. Of State of New Jersey, Civil Action No. 14-4303 (FLW) (commenced July 24, 2014); Smart v. McLivaine, Civil Action No. 14-4375 (RBK) (commenced July 24, 2014); Smart v. State of New Jersey, Civil Action No. 14-4645 (FLW) (commenced July 24, 2014). Hence, by now, the number of Plaintiff's district-, appellate- and Supreme Court-level cases has reached, at the very least, 95.

3

material factual] matter or controlling [legal] decisions." Clark, 940 F. Supp. 2d at 189. Thus, to succeed on a motion for reconsideration, the movant must demonstrate at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[3] Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). In other words, "[a] motion for reconsideration [is not] an opportunity for a second bite at the apple." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998); see also Buffa v. N.J. State Dep't of Judiciary, 56 Fed. App'x 571, 575 (3d Cir. 2003); P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001) ("A party seeking reconsideration must show more than a disagreement with the Court's decision") (citations and quotation marks omitted).

Here, Plaintiff's application was filed out of time for the purposes of Rule 7.1(i), and – despite its volume - failed to state a viable basis for reconsideration. As this Court already explained:

---

[3] In the last option, "the movant must show that dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered," D'Argenzio v. Bank of Am. Corp., 877 F. Supp. 2d 202, 207 (D.N.J. 2012) (internal quotation marks and citation omitted), and the court's failure to cure the error would result in "manifest injustice." Leja v. Schmidt Mfg., Inc., 743 F. Supp. 2d 444, 456 (D.N.J. 2010).

Plaintiff's complaint named five Defendants: Aramark Inc. [state prisons' food supplier], one of Aramark's executives, the Department of Corrections, Camden Board of Freeholders and the warden of CCCF.  The complaint asserted that the CCCF did not allow the inmates to work at the CCCF's kitchen if the inmates had facial hair since it required, as a prerequisite to such employ, that the inmates would shave their beards.  From that requirement, Plaintiff deduced that Defendants must have discriminated against Muslim, Jewish and Christian inmates who had facial hair due to their religious beliefs.  . . .  Plaintiff invoked his First Amendment rights in order to seek $1 million from Aramark, $1 million from the DOC, $1 million from the Freeholders, $1 million from the Warden and $10,000 from the Aramark's executive.  The DOC and Warden, in his official capacity, are not amenable to a § 1983 suit.  Plaintiff's <u>respondeat</u> <u>superior</u> claims against Aramark, the Aramark executive and Freeholders also fail, as has already been explained to Plaintiff [by the judges who presided over] in his prior suits.  Moreover, . . . Plaintiff's reliance on the First Amendment is misplaced.  . . .  Even if this Court presumes that: (a) Plaintiff's religious beliefs are sincerely held, and (b) he has facial hair because of these beliefs, his ability to practice his religion cannot be affected by his inability to have his beard at the CCCF's kitchen.  Correspondingly, if construed liberally, Plaintiff's allegations may suggest only Fourteenth Amendment challenges, e.g., due process and equal protection claims.  However, such claims are also meritless.  Prisoners have no protected liberty or property interest in retaining prison employment and, certainly, in employment at a particular position, <u>e.g.</u>, as a kitchen staff.  Therefore, Plaintiff's due process claim necessarily fails: if he has no constitutional right to work, moreover to work as a kitchen staff, he <u>a</u> <u>fortiori</u> has no right to work at the CCCF's kitchen while having a beard.  Plaintiff's equal protection claim fares no better.  Here, he admits that all inmates wishing to work as CCCF's kitchen staff are obligated to shave their facial hair, regardless of whether they were Muslim, Jewish or Christian.  . . .  Since the regulation challenged by Plaintiff applies equally to all inmates regardless of their religious beliefs, and is rationally related to the CCCF's legitimate penological goal of minimizing

>     hair contamination of the food served at the CCCF,
>     Plaintiff's equal protection claim fails.

Smart, 2014 U.S. Dist. LEXIS 73106, at *4-11 (citations, brackets quotation marks, footnotes, parentheticals and ellipses omitted).

Plaintiff is now challenging the above-quoted decision by maintaining that this Court failed to screen his complaint under the standards articulated in Erickson v. Pardus, 551 U.S. 89 (2007); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); and Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002). See Docket Entry No. 5, at 1-2. Plaintiff's position is belied by this Court's above-quoted ruling.

Under Erickson, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." 551 U.S. at 94 (citations and quotation marks omitted). Here, this Court did exactly that: even though Plaintiff's free exercise claims (as well as his allegations barred by the Eleventh Amendment immunity and inapplicability of the doctrine of respondeat superior to § 1983 actions for damages) were meritless, this Court did not end its analysis upon addressing the complaint under the First Amendment and, but liberally construing Plaintiff's facts, analyzed those facts under the Due Process and Equal Protection standards.

6

Having concluded that Plaintiff's claims, no matter how construed, could not amount to a viable claim, this Court dismissed the complaint precisely under the holding of Twombly. Screening *any* pleading, a district court is obligated to ask "whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 583 (2007) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions'"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal [and Twombly] provides the final nail-in-the-coffin for the 'no set of facts' standard that applied . . . before Twombly" and required proceeding any plaintiff's claim to service unless the claim was based on the facts that were facially fanciful or delusional).

In light of Twombly and Iqbal, the Third Circuit directed the district courts to apply a two-part analysis in reviewing all civil complaints, be they represented and submitted pro se. First, a district court must accept all of the complaint's well-pleaded facts as true, but should disregard any legal conclusions. See Fowler, 578 F.3d at 210. Second, the district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

Here, this Court did exactly that: (a) it presumed that all Plaintiff's well-pled factual allegations were true (i.e., the Court neither questioned that the inmates wishing to work at the CCCF kitchen were required to shave their beards nor doubted that the requirement was applied to all Christian, Jewish and Muslim inmates) and ignored Plaintiff's self-serving bold conclusions of law; and (b) upon examining Plaintiff's well-pled facts under the substantive tests applicable to free exercise, due process and equal protection claims, determined that the complaint failed to state a plausible claim for relief.  In light of that finding, this Court dismissed Plaintiff's challenges.

> [Where] the District Court . . . conclude[s] that [the plaintiff's] filings [are] inadequate, . . . [leave to amend] must be granted in the absence of . . . futility of amendment. [See] Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). . . .  [[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, [although the District Court should state the] justifying reason, [for instance, to point out such] futility . . . .

Grayson, 293 F.3d at 108.

Here, this Court explained to Plaintiff that, "[g]ranted that Plaintiff's complaint, being detailed and lengthy, unambiguously shows that his challenges are limited to the CCCF's sanitary regulation allowing the inmates to be employed as kitchen staff only if they shave their facial hair, Plaintiff's complaint will be dismissed with prejudice . . . .  No leave to

amend is warranted here since [a] paraphrasing of the same facts would not cure the core deficiencies of his claims." Smart, 2014 U.S. Dist. LEXIS 73106, at *11-12 and n. 10 (citing Foman and Grayson). Therefore, Plaintiff's current position that this Court has not applied the Twombly, Erickson and Grayson standards when the Court screened his complaint is belied by this Court's analysis conducted in the opinion Plaintiff challenges.

Plaintiff is also challenging this Court's ruling by asserting that the Court erred in reading his complaint as stating that he was a religious Muslim, and that error materially affected the Court's free exercise analysis. See Docket Entry No. 5, at 2-5. As this Court has already explained to Plaintiff, convicted prisoners retain "protections . . . against any law prohibiting the free exercise of religion," Smart, 2014 U.S. Dist. LEXIS 73106, at *7-8, n.6 (citing DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000)), but "a prisoner's right to practice his religion is not absolute," and, in addition, a "mere assertion of a religious belief does not automatically trigger First Amendment protections [because] only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections." Id. at *8, nn. 6, 7 and 8 (quoting DeHart, 227 F.3d at 51, and Dreibelbis v. Marks, 675 F.2d 579, 580 (3d Cir. 1982), and citing Turner v. Safley, 482 U.S. 78, 89-90 (1987), to stress "that courts should assess . . . the plaintiff's 'alternative

9

means' to exercise his religious rights, [and Plaintiff's religious rights could not [him] to work as a kitchen staff").

Notably,

> [t]he . . . Turner analysis is . . . conducted as a second step only: such analysis is warranted [only] if the allegations made by [the] plaintiff show that his [religious] beliefs are . . . sincerely held . . . .

Love v. N.J. Dep't of Corr., 2011 U.S. Dist. LEXIS 10102, at *35 (D.N.J. Jan. 31, 2011) (citing DeHart, 227 F.3d at 52). The question of what belief may qualify as "religious" under the Free Exercise Clause was touched upon in Welsh v. United States, 398 U.S. 333 (1970), where Justice Harlan observed:

> Congress was not embracing that definition of religion that alone speaks in terms of "devotion or fidelity" to individual principles acquired on an individualized basis but was adopting, at least, those meanings that associate religion with [cognizable] worship or shared beliefs by a recognizable and cohesive group.

Welsh v. United States, 398 U.S. 333, 353 (1970) (Harlan, J., concurring in the majority's finding that one's *serious and sincere* moral system should be entitled to the same protections allowed to a theistic religion); compare Ephraim v. Angelone, 313 F. Supp. 2d 569 (E.D. Va. 2003) (dismissing free exercise claims by an inmate who declared himself a "devout Christian of the Charismatic persuasion").

Here, the "Statement of Claim" section of Plaintiff's complaint (executed on May 1, 2014) alleged that, because of the

10

CCCF's requirement that all kitchen staff had to shave their beards, Plaintiff was

> deprived of [his] inestimable privile[]ge of *worshiping Almighty Allah* in a manner agreeable to [the] dictates of *Universal* Jewish and *Islamic principles*.

Docket Entry No. 1, at 8-9 (emphasis supplied).

In light of Plaintiff's references to "Almighty Allah" and "Universal Islamic principles," this Court presumed, without making a factual finding and solely for the purposes of screening the complaint, that Plaintiff held sincere Muslim beliefs. By July 25, 2014, that is, the date when Plaintiff executed his application at bar, he allegedly disavowed his Muslim beliefs asserted in the complaint and stated bluntly: "I would like to correct my religious status as Judaism [sic] not Muslim." Docket Entry No. 5, at 2. In other words, Plaintiff's religious views have transformed from Muslim to Jewish between May 1 and July 25, 2014. This fact might seem to raise a question as to the sincerity of Plaintiff's religious beliefs that, allegedly, required him to not to shave his beard. Accord Love, 2011 U.S. Dist. LEXIS 10102, at * 37, 49-50 ("How to address the 'moving target' of Plaintiff's self- proclaimed religious beliefs is a matter of some concern, granted that . . . his unique religious beliefs keep evolving in the way which this Court cannot neither establish with any degree of certainty nor predict with any reasonable approximation" because Plaintiff "qualified himself as

11

a student of the Old Testament [but nonetheless] concluded, among other things, that . . . Sabbath . . . should run from sundown on Saturday to sundown on Sunday, in contrast with the traditional Jewish Sabbath, running from sunset on Friday to sunset on Saturday") (brackets omitted). However, this Court is mindful of the Court of Appeals' guidance that "the District Court [should avoid] interject[ing] itself into [religious] doctrinal disputes." DeHart, 227 F.3d at 50 (3d Cir. 2000) (citations omitted); see Patrick v. Le Fevre, 745 F.2d 153, 158-99 (2d Cir. 1984) (the sincerity and nature of the plaintiff's beliefs is a question of fact even if the record indicates the plaintiff's "disdain for formal accouterments of religious worship") (citing "the eminent American philosopher William James [who reflected on] 'the feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine'").

The Court declines to engage in a discussion regarding the sincerity of Plaintiff's religious beliefs and reiterates its prior finding that, regardless of whether Plaintiff considers himself Muslim, Jewish or both, "his ability to practice his religion cannot be affected by his inability to have his beard at the CCCF's kitchen," Smart, 2014 U.S. Dist. LEXIS 73106, at *7. The denomination of Plaintiff's faith, whatever it might be, is

12

immaterial for the purposes of this Court's analysis.[4] Therefore, Plaintiff's now-declared Jewish beliefs cannot warrant reconsideration of this Court's prior decision.

Additionally, Plaintiff's displeasure with him accruing a strike for the purposes of the three-strikes rule cannot offer a basis for reconsideration. "The [Prison Litigation Reform Act] sought to 'reduce the quantity and improve the quality of prisoner suits,' in three main ways [one of which became knows as] a so-called 'three strikes' rule [that] limit[s] the number of lawsuits brought by prisoners with a history of meritless

---

[4] Moreover, even outside the CCCF kitchen, Plaintiff's free exercise rights cannot be violated by a CCCF requirement, if such exists, to trim his hair or beard. See, e.g., Pollock v. Marshall, 845 F.2d 656 (6th Cir.), cert. denied, 488 U.S. 897, rehearing denied, 488 U.S. 987 (1988) (prison regulation restricting hair length did not violate free exercise rights of the inmate who believed hair was sacred and should not be cut, since the regulation had rational connection to legitimate government objectives such as quick identification of prisoners, security, sanitation, decrease of likelihood of sexual attacks, etc.); see also Hamilton v. Schriro, 74 F.3d 1545, rehearing en banc denied 1996 U.S. App. LEXIS 6165, cert. denied, 519 U.S. 874 (1996) (hair-length regulations did not deny an inmate's right to free exercise of religion); Abordo v. Hawaii, 902 F. Supp. 1220 (D. Haw. 1995), aff'd 1998 U.S. App. LEXIS 8018 (9th Cir. Apr. 23, 1998) (prison's hair-cutting regulation was logically connected to state's legitimate concerns of cleanliness, security and safety); accord Friedman v. Arizona, 912 F.2d 328 (9th Cir. 1990) (DOC's policy limiting facial hair did not infringe on inmates' right to exercise religion freely where the policy permitted mustaches, sideburns and shoulder length hair but prohibited beards except for medical reasons); Dunavant v. Moore, 907 F.2d 77 (8th Cir. 1990) (a correctional center's policy that beards not exceed two inches in length did not violate inmate's right to freely exercise religious beliefs).

litigation." Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)). While "'unclear' dismissals can[not] be counted as strikes for purposes of § 1915(g)," id. at 463 (citing Byrd v. Shannon, 715 F.3d 117 (3d Cir. 2013)), and "a strike under § 1915(g) will accrue only if the *entire* action" is dismissed, id. at 464 (quoting Byrd, 715 F.3d at 125) (emphasis supplied), an unambiguous dismissal of the entire complaint necessarily counts as a strike if that dismissal is with prejudice and entered at the sua sponte screening – or the Rule 12(b)(b) – stage. See id. at 460 ("When a court dismisses [a] . . . complaint [upon] concluding that the complaint fails to state a claim, [S]ection 1915(g)'s plain text compels [the court] to count that case as a strike"). Under this statutory regime, a litigant's displeasure with accruing a strike matters none.

Therefore, if construed as a motion for reconsideration, Plaintiff's application should be denied as untimely and wholly meritless. See In re Telfair, 745 F. Supp. 2d 536, 560 (D.N.J. 2010) ("[A] motion for reconsideration is  a device of limited utility"); Assisted Living Assocs. of Moorestown, L.L.C., v. Moorestown Tp., 996 F. Supp. 409, 442 (D.N.J. 1998) (mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration because such disagreement should be raised through the appellate process)

14

(collecting cases). Being seemingly aware of that shortcoming of his application, Plaintiff characterized it as a Rule "60B(6)" motion. See Docket Entry No. 5, at 1.[5] Such characterization, however, does not salvage the application.

Under the "catch-all" provision, a party seeking relief from a final judgment "must demonstrate the existence of extraordinary circumstances that justify reopening the judgment." Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008). The Court of Appeals underscored that a Rule 60(b)(6) remedy is warranted only if "extraordinary circumstances" are present, and such circumstances "rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." See id.; see also United States v. Alpine Land & Reservoir, Co., 984 F.2d 1047, 1049 (9th Cir. 1993) (Rule 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest injustice"). Here, if construed as a Rule 60(b)(6) motion, Plaintiff's application warrants no relief. No statement in Plaintiff's application suggests that dismissal of his claims and his resulting accrual of a strike would yield manifest injustice. Therefore, the remedy envisioned by the "catch-all" provision is wholly inapplicable here.

---

[5] This Court presumes that Plaintiff aimed to invoke the Subsection (b)(6) of the Fed. R. Civ. P. 60, i.e., the so-called "catch-all" provision.

15

For these reasons, Plaintiff's application at bar will be denied, his complaint will remain dismissed with prejudice, and such dismissal will remain a strike for the purposes of the three-strikes rule.[6]

An appropriate Order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: August 15, 2014

---

[6] While a certification of frivolity of claims is a device rarely resorted to by the judiciary in this District, in light of Plaintiff's meritless claims stated in the complaint and frivolity of his application at bar, this Court finds it warranted to certify, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3)(A), that the entirety of Plaintiff's claims raised in this matter, be they raised at the pleading stage or in the application at bar, are legally frivolous, and any appeal from the Order accompanying this Opinion would too be frivolous and not taken in good faith.